UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| DENISE N. NEATH | * | |
|     Plaintiff | * | |
|     v. | * | Civil Case No. 8:21-cv-01580-AAQ |
| LLOYD AUSTIN, III, *et al.* | * | |
|     Defendants | * | |

**MEMORANDUM OPINION**

This is a case concerning allegations of employment discrimination on the basis of race. Plaintiff Denise N. Neath, who is proceeding *pro se*, alleges that the Department of Defense and multiple sub-agencies and individuals employed by such discriminated against her on the basis of her race pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17. Defendants seek to dismiss Plaintiff's claims via a Motion to Dismiss, or in the Alternative, for Summary Judgment.

For the reasons discussed below, Defendants' Motion to Dismiss will be converted to a Motion for Summary Judgment and shall be GRANTED.

**BACKGROUND**

Plaintiff Denise N. Neath ("Plaintiff") began working at the Walter Reed National Military Medical Center, Department of Research Programs, in June 2004 as a Research Protocol Specialist. ECF No. 14-3 at 9. In this capacity, Plaintiff reported to various first and second-level supervisors. *Id.*

Plaintiff alleges that while employed she faced discrimination on the basis of her race in violation of Title VII of the Civil Rights Act. ECF No. 1, at 4. First, Plaintiff alleges that beginning on or around September 18, 2019, her first level supervisor required the presence of a witness in every meeting held in person with Plaintiff. ECF No. 1-1, at ¶ 13. Second, Plaintiff alleges that in June 2019 she was given a performance rating of "3" while two female white Research Protocol Specialists of the same GS classification received performance ratings of "5." *Id.* at ¶ 14. As a result of these ratings, Plaintiff alleges the white employees received cash awards while Plaintiff received an award of four hours of time off. *Id.* at ¶ 15.

Finally, third, Plaintiff's alleges that she was threatened with disciplinary action or removal if she did not receive a flu vaccine or provide proof of exemption to her superiors by a specified date, *id.* at ¶ 16, pursuant to a 2018 policy that expanded the list of employee positions covered under the Department of Defense's (the "Agency") governing influenza immunization policy (the "Policy"). ECF No. 14-19. The Policy was implemented after the National Capital Region Medical Directorate and the Union to which the Plaintiff belonged signed a Memorandum of Understanding outlining the updated Policy.[1] ECF No. 14-20.

Prior to bringing this lawsuit, Plaintiff engaged in an administrative process, lodging a formal Equal Employment Opportunity ("EEO") Complaint of Discrimination on December 18, 2019. ECF No. 14-3, at 14. Pursuant to that process, three of her claims were accepted for investigation. *Id.* at 100-04. Those claims involved: (1) a Memorandum of Proposed Discipline

---

[1] Plaintiff's Complaint also initially included an allegation that she was paid less than a white co-worker who performed the same duties. ECF No. 16-1, at 3. Due to an administrative error, there was some dispute as to whether the Plaintiff had properly included the allegation in the initial filed version of the Complaint. ECF No. 20, at 2-3. Out of an abundance of caution, the Court granted both parties leave to address the paragraph. *Id.* at 3-4. However, Plaintiff ultimately chose to abandon the claim therein. ECF No. 22. Accordingly, I shall not address it in this Opinion.

or Removal advising Plaintiff of potential action if she did not obtain her flu vaccine; (2) Plaintiff's discovery of a considerably lower performance award than her co-workers; and (3) Plaintiff's subjection to a hostile work environment by management. *Id.* The remainder of Plaintiff's claims were dismissed as untimely. *Id.* As part of the investigation process, a large amount of information was gathered including, but not limited to: employment data, performance evaluations, Agency policies, documents related to Plaintiff's disciplinary actions, and declarations of various relevant parties. *See Id.* at 3-4, 108-15 (listing the evidence considered); ECF No. 14-4, at 116-18 (summarizing the results of the review of the evidence). In addition, Plaintiff was given the opportunity, while represented by counsel, to depose three of her supervisors. *See e.g.,* ECF Nos. 14-18, 25, 26. The Equal Employment Opportunity Commission ultimately granted the Agency's Motion for Summary Judgment against Plaintiff. ECF No. 14-23.

On June 25, 2021, Plaintiff filed the present lawsuit raising the allegations described above. ECF No. 1. On February 18, 2022, Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 14. Plaintiff filed her Reply to that Motion on March 9, 2022. ECF No. 16. Defendants also filed a Corrected Reply to Plaintiff's Response in Opposition to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment on March 24, 2022. ECF No. 18.

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b) provides that a party may move to dismiss where there is "failure to state a claim upon which relief can be granted." If "matters outside the pleadings are presented to and not excluded by the court[,]" a 12(b)(6) motion may be treated as one for summary judgment under Fed R. Civ. P. 56. Fed. R. Civ. P. 12(d). *See Hamilton v. Mayor & City Council of Baltimore*, 807 F.Supp.2d 331, 341 (D. Md. 2011). However, a court cannot convert a motion to

dismiss to one for summary judgment "unless it gives notice to the parties that it will do so." *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *6 (D. Md. Apr. 16, 2013) (citing *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998)).  This may be accomplished where the movants "expressly [caption] their motion 'in the alternative' as one for summary judgment, and [submit] matters outside the pleadings for the court's consideration." *Id.* Once that is done, the parties are on notice that conversion may take place under Fed. R. Civ. P. 12(d).  *Id.*  However, summary judgment is inappropriate if there has not been an "opportunity for reasonable discovery." *Sanders v. Callender*, No. DKC 17-1721, 2019 WL 3717868, at *2 (D. Md. Aug. 6, 2019) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448 (4th Cir. 2011)).

If converted, a motion for summary judgment shall be granted where the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may "affect the outcome of the suit under the governing law." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016).  In addition, a genuine dispute is one where "a reasonable jury could return a verdict for the nonmoving party." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.,* 673 F.3d 323, 330 (4th Cir. 2012)).  When reviewing a motion for summary judgment, the Court views the facts and their justifiable inferences in the light most favorable to the non-moving party.  *Id.* at 312.  If the moving party comes forward with a motion for summary judgment that contains proper support, the burden then shifts to the non-moving party to show that there are in fact genuine issues for trial, or as noted above, that it cannot present facts "essential to justify its opposition" without further discovery.  Fed. R. Civ. P. 56(d);

*see Celotex Corp.v. Catrett,* 477 U.S. 317, 322 (1986); *Morrow v. Farrell*, 187 F.Supp.2d 548, 551-53 (D. Md. 2022).

## DISCUSSION

Defendants ask the Court to dismiss Plaintiff's claims, or in the alternative, to grant Defendants' Motion for Summary Judgment. The court must deny a motion for summary judgment or delay ruling on the motion if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify the opposition." Fed. R. Civ. P. 56(d). The Fourth Circuit places a large degree of weight on a Rule 56(d) affidavit presented in opposition to a request to convert a motion to dismiss. *See Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 961 (4th Cir. 1996) ("We, like other reviewing courts, place great weight on the Rule 56(f) [now Rule 56(d)] affidavit . . . "). The failure to file such an affidavit may be "sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Wells-Bey*, 2013 WL 1700927, at *7 (quoting *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)). However, failing to file a Rule 56(d) affidavit is not necessarily fatal where the "nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary." *See id.* (quoting *Harrods Ltd.*, 302 F.3d at 244-45). At this stage of the proceedings, discovery has not commenced. Accordingly, it would be improper to convert the Motion if Plaintiff is able to identify potential facts that would assist her in responding to Defendants' Motion for Summary Judgment.

Plaintiff has not filed an affidavit under Rule 56(d). However, she has filed a Reply to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment in which she asserts that further discovery is needed and summary judgment is premature. ECF No. 16. As a *pro se* litigant, Plaintiff's complaint and documents are to be "liberally construed" and are held to "less

stringent standards" than filings presented by counsel. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Even under this standard, as I explain below, Plaintiff has failed to make an adequate showing of the necessity of further discovery; as such, I will convert Defendants' Motion to Dismiss to a Motion for Summary Judgment. Upon conversion of Defendants' Motion to a Motion for Summary Judgment, I find that Plaintiff has failed to bring forward evidence of a genuine dispute of material fact. As a result, Defendants are entitled to summary judgment.

### A. Plaintiff Has Failed to Demonstrate a Need for Further Discovery under Fed. R. Civ. P. 56(d).

In order to prevent conversion of a Motion to Dismiss to a Motion for Summary Judgment, Plaintiff must show that she "cannot present facts essential to justify the opposition." Fed. R. Civ. P. 56(d). As noted, a plaintiff does not necessarily need to present a formal affidavit, but must make some showing as to additional discovery that they need. *Harrods Ltd.*, 302 F.3d at 244 ("Nevertheless, in some cases courts have held that summary judgment was premature even when the opposing party failed to file a Rule 56(f) [now Rule 56(d)] affidavit . . . courts have not always insisted on a Rule 56(f) affidavit if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary"). Plaintiff has failed to do so in this case.

Plaintiff's Response to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment generally states that more discovery is needed. ECF No. 16. For example, Defendants claim that a third-party presence was required in all meetings between Plaintiff and her supervisor because she was "increasingly contentious and insubordinate."[2] ECF No. 14-1 at

---

[2] Defendants assert that Plaintiff has waived this claim as it was dismissed during the administrative proceedings. Defendants argue Plaintiff did not raise this issue before the Administrative Law Judge during proceedings, nor did she more generally challenge the decision. As a result, Defendants argue the claim "was not exhausted and should not be considered in support

25. Plaintiff responds that "discovery must be conducted in order to inquire into [the] veracity of such claims in relation to discriminatory animus stemming on the bases of Plaintiff's race and color." ECF No. 16, at 3. Plaintiff presents a similar argument in response to Defendants' assertions that Plaintiff's performance was deficient; she simply states: "discovery must be conducted to prove or disprove the basis for the disparate ratings." *Id.* at 4-5.

Plaintiff's arguments overlook the fact that she has already received discovery on both matters. For example, during the administrative process, Plaintiff's supervisor, Daniel Brooks submitted a declaration that a third party was required to be present in all meetings with Plaintiff because she had a long history of refusing to comply with instructions. ECF No. 14-6, at 332-35. Accordingly, after consultation with Human Resources, Defendants determined that a third party would ensure that a neutral witness was there to record the events of the meeting. *Id.* In addition to receiving a sworn affidavit from Mr. Brooks, Plaintiff was also able to depose him during the administrative process. ECF No. 14-25. Likewise, regarding her performance, Plaintiff received a declaration from her second-level supervisor, Peter Weina, who asserted that Plaintiff did only the "minimum work" required of her position. ECF No. 14-6 at 354. During his deposition, Mr. Weina also testified to the fact that the rating system was developed so that the vast majority of employees would receive ratings of "3" in their performance evaluations and only about twenty percent of evaluated employees would receive a "5." ECF No. 14-18, p. 29-30. The EEOC also produced performance evaluations for Ms. Neath, as well as several other employees, which detail the basis for each of their respective awards. ECF Nos. 14-11, 14-12, 14-13, 14-14, 14-17. Ms. Neath has not explained what else she would do in discovery to test the basis for the ratings.

---

of Plaintiff's claim of discrimination." ECF No. 14-1 at 19-20. The Court does not address this argument given the fact that Plaintiff's claim fails for other reasons.

7

Plaintiff also states that "[d]iscovery must be authorized to obtain data and records that would lead to discovery of admissible evidence with regards to other non-patient care personnel and whether they too were required to receive [the] flu vaccine." ECF No. 16, at 6. Again, the data and records Plaintiff claims to need were provided during the administrative process. For example, the "NCR Staff Seasonal Influenza Immunization Policy" provides a full list of job series personnel required to be immunized, including all employees with Plaintiff's job series number. ECF No. 14-19. In addition, Plaintiff's third-level supervisor, Ruben Acosta, submitted a declaration noting that all staff sharing Plaintiff's job series number were required to receive vaccination by a command instruction. ECF No. 14-6, at 372. Plaintiff was also given the opportunity to raise such inquiries, which she did, in the depositions of her supervisors. *See e.g.* ECF Nos. 14-18, at 44, 14-25, at 11, 14-26, at 11.

In sum, Plaintiff does not explain why these opportunities were insufficient and warrant further discovery into Defendants' motivations. Additionally, Plaintiff fails to identify exactly what additional discovery she would need beyond the significant amount that she already received through the administrative process. Accordingly, in the context of this specific case, Plaintiff fails to explain why she lacks facts "essential to justify [her] opposition." *See Sanders*, 2019 WL 3717868, at *2-3 (holding motion for summary judgment to be proper where plaintiff could not provide specific reasons for needing discovery, nor what discovery plaintiff would conduct); *Hamilton*, 807 F.Supp.2d at 342 (converting motion to dismiss into a motion for summary judgement where plaintiff "failed to demonstrate that the evidence she now wishes to discover will materially affect the outcome of this case"). Plaintiff's explanation, though general, might be sufficient in another case involving a *pro se* plaintiff. However, given the fact that Plaintiff has

8

received both extensive paper discovery, including the precise records she asserts are needed, and the opportunity to depose multiple supervisors, the explanation she provides is insufficient.

Because Plaintiff has not demonstrated that further discovery is needed, I will construe the Motion as one for Summary Judgment.

### B. Plaintiff's Claim for Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964 Fails.

In order to succeed on an employment discrimination claim under Title VII, a plaintiff must produce either "direct evidence of discrimination or proceed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Matias v. Elon University,* 780 Fed.Appx. 28, 30 (4th Cir. 2019).

Where there is no direct evidence, a *prima facie* case of discrimination under Title VII consists of the following elements: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *See Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

If a plaintiff successfully pleads all four elements, the burden shifts back to defendants to show that there are legitimate, nondiscriminatory justifications for their actions. *See Dawson v. Washington Gas Light Company,* No. 19-2127, 2021 WL 2935326, at *4 (4th Cir. July 13, 2021). Following that showing, a plaintiff must then prove "by a preponderance of the evidence that the defendant's articulated reasons are pretextual." *Id.* (citing *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 726 (4th Cir. 2019)). The preponderance of the evidence standard "requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *Id.* at *5 (quoting *Salem v. Holder*, 647 F.3d 111, 116 (4th Cir. 2011)). To demonstrate pretext, a plaintiff may show that a defendant's justifications are false or inconsistent over time. *Id.* (citing *E.E.O.C.*

9

*v. Sears Roebuck & Co.*, 243 F.3d 846, 852-53 (4th Cir. 2001)).  A plaintiff can also cite comparator evidence showing similarly situated employees outside the protected class were treated more favorably.  *Id.* (quoting *Laing v. Fed Express Corp.,* 703 F.3d 713, 719 (4th Cir. 2013)).

Plaintiff makes no allegations of conduct or statements that constitute direct evidence of discrimination in the present case.  *See Nzabandora v. Rectors & Visitors of Univ. of Virginia,* 749 F. Appx 173, 175 (4th Cir. 2018) ("To survive summary judgment on the basis of direct evidence of discrimination, a plaintiff must produce 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'") (quoting *Jacobs v. N.C. Admin. Office of the Courts,* 780 F.3d 562, 577-78 (4th Cir. 2015)).  As a result, the Court evaluates Plaintiff's claims under the burden-shifting framework established in *McDonnell Douglas Corp.*, 411 U.S. at 802.

Plaintiff has put forward arguments attempting to establish a *prima facie* case of discrimination.  Assuming those arguments satisfy her initial burden, Defendants have nonetheless sufficiently rebutted that *prima facie* case.  For each allegation of discrimination, Defendants have provided legitimate and nondiscriminatory explanations for their actions which Plaintiff fails to rebut as pretextual.

### 1. The Third-Party Witness Requirement

Plaintiff's first allegation of employment discrimination on the basis of her race is the requirement that a witness attend every in-person meeting Plaintiff had with her first-level supervisor. ECF No. 1-1, at ¶ 13.  Through the administrative process, Defendants explained, with ample evidence, that Human Resources requested the presence of a neutral, third-party witness at all meetings due to Plaintiff's history of refusing to comply with Agency instructions and Plaintiff's previous allegations of harassment against management. ECF No. 14-1, at 25-26; ECF

No. 14-3, at 114; ECF No. 14-4, at 194; ECF No. 14-6 at 332.  Resulting from Defendants' sufficient rebuttal, Plaintiff must present evidence that Defendants' justifications were pretextual.  As noted above, pretext can be shown if Plaintiff can show, by a preponderance of the evidence, that Defendants' justifications are false or inconsistent over time. *Dawson,* 2021 WL 2935326, at *5.  At this stage, Plaintiff must create a genuine issue of material fact regarding Defendants' motivations.

Plaintiff fails to provide any response other than stating that "discovery must be conducted in order to inquire into the veracity of such claims" and that she disputes the characterization.  ECF No. 16, at 3.  As noted above, substantial discovery has already been provided.  Further, her general response that she disputes that she was insubordinate is insufficient to survive summary judgment.  Thus, Plaintiff has failed to meet her burden as to this particular allegation.

### 2.  Plaintiff's Lower Performance Rating

A similar pattern follows for Plaintiff's remaining allegations.  Plaintiff next alleges that she received a lower performance rating than her co-workers.  ECF No. 1-1, at ¶ 14.  While her white co-workers received performance ratings of "5" in 2019, Plaintiff received a rating of "3." *Id.*  As a result of such ratings, Plaintiff received a time-off award, while her white colleagues received cash bonuses.  *Id.* at ¶ 14-15.  Plaintiff further alleges that Defendants were unable to identify "any defect in [her] performance," or "justify" the disparate ratings.  ECF No. 16, at 4-5.

Defendants, however, explained Ms. Neath's and her comparator's performance ratings and awards, noting that the majority of employees received performance ratings of "3", a rating which demonstrates an adequate or satisfactory performance.  ECF No. 14-18, at 29-30.  Defendants explained that awards were given on the basis of performance evaluations, as outlined in the applicable collective bargaining agreement.  ECF 14-1, at 5-6.  Applying these

11

considerations, Defendants noted that Plaintiff put in the "minimum amount of work" required of her, ECF No. 14-6, at 354, and Plaintiff's performance metrics for the 2019 performance cycle listed her efficiency at less than 70% while her colleagues maintained higher efficiency percentages. ECF No. 14-1, at 30; ECF No. 14-11, at 20. Her performance evaluation for 2019 also notes that Plaintiff needed to be more responsive to internal customers' needs for protocol submissions. ECF No. 14-4, at 146. In contrast, the evaluation of one of her co-workers who received a higher rating, noted that the co-worker had a workload 25% heavier than other analysts. ECF No. 14-17, at 3. A second co-worker, who also received a high rating, completed 108% of the tasks expected, compared to only 80% of objectives by Plaintiff. *Compare* ECF No. 14-12, at 11 and ECF No. 14-11, at 26. Additionally, Defendants furnished performance evaluation reports of other similarly situated employees which demonstrate that, historically, Black employees have received performance ratings of "5" and white employees also received performance ratings of "3", as she received. ECF 18-1, at 8-9. Plaintiff has failed to provide any evidence supporting a conclusion that the asserted bases for her rating were pretextual and that her lower ratings were discriminatory.

Accordingly, based on the record, the Court shall grant Defendants' Motion as to this argument, as well.

### 3. Plaintiff's Failure to Receive a Flu Shot

Finally, Plaintiff alleges she was disciplined and later threatened with additional disciplinary action or removal if she did not receive a flu vaccine or provide proof of exemption, pursuant to the governing Policy. ECF No. 1-1, at ¶ 16. Plaintiff was suspended for two consecutive days in September 2019 for failing to receive the flu vaccine. ECF No. 16, at 6. Plaintiff's Complaint also asserts that on December 6, 2019, she was again threatened with

disciplinary action or removal if she did not receive a flu vaccine. ECF No. 1, at ¶ 16. As explained below, regarding this last allegation, Plaintiff has failed to establish a *prima facie* case of discrimination.

Defendants have prevented ample evidence that, contrary to her claim that she was treated disparately, Ms. Neath's was one of several positions for which employees were required to be immunized against the flu. ECF No. 14-1, at 6. In support, Defendants provided, among other things, copies of: (1) a letter, dated January 28, 2018, from the Agency to the Union regarding their intention to expand the list of positions subject to mandatory influenza immunization, with positions to be newly covered listed, ECF No. 14-19; and (2) a Memorandum of Understanding ("MOU"), dated April 2, 2019, between the Agency and the Union covering the implementation of the Policy, ECF No. 14-20. That MOU states its purpose is to "(1) Protect the Federal workforce, and (2) Ensure the continuity of operations." *Id.* at 1. The EEO investigative file also contains two Memoranda issued separately to Plaintiff in May and December of 2019 stating that, pursuant to the Agency Policy, her employment position requires immunization. ECF No. 14-3, at 33; ECF No. 14-4, at 205-07.

In response, Ms. Neath relies primarily on her own declaration, ECF No. 16, at 5-6; the statements therein, however, are largely unsupported by the record. For example, Ms. Neath alleges that she was the only individual disciplined for failing to comply with the vaccine mandate. ECF No. 16, at 5. As noted above, the record is clear that the vaccine mandate was applied across the Agency, in an expanded form, pursuant to a new MOU. Ms. Neath has failed to provide any persuasive evidence that the Policy was, in fact, selectively enforced. Ms. Neath cites to a 2012 Policy, pursuant to which her position was exempted from the vaccination requirement. ECF No. 16, at 5. However, as discussed, the Policy was superseded by the 2019 MOU, of which Ms. Neath

was directly informed on multiple occasions as early as May 2019.  ECF No. 14-4, at 205-07. Plaintiff also cites an October 2019 memorandum requiring individuals who interact with patients or provide patient care to receive an influenza shot.  ECF No. 16, at 6.  While the document has some value, its import is limited by the fact that several other documents – including Plaintiff's job description – make clear that while the immunization Policy included patient-facing individuals, it also included those working in Plaintiff's position.  ECF No. 14-5, at 285-89. Plaintiff also cites a May 30, 2019 letter from the Agency's Occupational Health Director asking that she be removed from the Policy's purview because she does not interact with patients.  ECF No. 14-5, at 274.  The document, however, fails to support the conclusion that Plaintiff was treated disparately.  The list of categories of jobs to which the Policy applies include several groups, other than Plaintiff's, that do not regularly interact with patients, including cooks, custodians, and laundry workers.  ECF No. 14-4, at 199.  Finally, Plaintiff names other individuals who she believes did not receive a vaccination, but she admits that they had retired before the new Policy went into effect.  ECF No. 14-3, at 10.

Even assuming Plaintiff had made a *prima facie* case of discrimination, as explained above, Defendants have presented evidence that the Policy was motivated by legitimate safety and health concerns.  In response, Plaintiff has failed to provide any evidence that these allegations were pretextual.  Accordingly, her claim, on this ground, must be dismissed, as well.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED. The clerk shall enter judgment accordingly.  So ordered.

Dated: March 7, 2023                                            _____/s/_____
                                                                                       Ajmel A. Quereshi
                                                                                       United States Magistrate Judge